UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4014

ADMART AG; HELLER WERKSTATT GESMBH;
ANDRE HELLER; STEFAN SEIGNER,
Appellees

vs.

STEPHEN and MARY BIRCH FOUNDATION, INC.,
Appellants

Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 95-cv-00410 )
District Judge:  Honorable Sue L. Robinson

Argued September 29, 2005
Petition for Panel Rehearing granted

Before:  RENDELL, FUENTES and WEIS, Circuit Judges.

## JUDGMENT

This cause came to be heard on the record from the United States District Court for

the District of Delaware and was argued by counsel on September 29, 2005.

On consideration whereof, it is here now ORDERED AND ADJUDGED by this

Court that the Judgment of the said District Court entered October 6, 2004 be, and the

same is hereby affirmed.  All of the above is in accordance with the Opinion of this

Court.

Each party to bear its own costs.

Certified as a true copy and issued in lieu
of a formal mandate on _____10/20/06_____

Teste: _Marcia M. Waldron_
ATTEST:  Clerk, U.S. Court of Appeals for the Third Circuit

/s/ Marcia M. Waldron
Clerk

Dated:      September 28, 2006

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――

No. 04-4014

―――――――

ADMART AG; HELLER WERKSTATT GESMBH;
ANDRE HELLER; STEFAN SEIGNER,
Appellees

vs.

STEPHEN and MARY BIRCH FOUNDATION, INC.,
Appellants

―――――――

Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 95-cv-00410 )
District Judge: Honorable Sue L. Robinson

―――――――

Argued September 29, 2005
Petition for Panel Rehearing Granted
Before: RENDELL, FUENTES and WEIS, Circuit Judges.
(Filed: September 28, 2006 )

―――――――

Alice A. Seebach, Esquire (ARGUED)
Seebach & Seebach
633 West Fifth Street, Suite 5410
Los Angeles, CA 90071

Attorneys for Appellant

Thomas A. Brown, II, Esquire (ARGUED)
Orans, Elsen & Lupert
875 Third Avenue, 28th Floor
New York, NY 10022

Attorneys for Appellees

---

## OPINION

---

WEIS, Circuit Judge.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 imposes rigid restrictions on confirmation of awards issued by an arbitral entity in a signatory country. In the case before us, the District Court appropriately issued a confirmation judgment. However, some variances in the specific directions of execution on the judgment differ from those in the Award and will be modified to conform more closely to its text and to the circumstances that presently exist.

2

I.

The Stephen and Mary Birch Foundation, Inc. is a Delaware not-for-profit corporation ("Birch").    In 1990, it entered into an agreement to buy "Luna Luna," an open-air exhibit composed of artwork created by approximately thirty renowned artists. One of the plaintiffs, Andre Heller, organized the exhibition.

The original sellers of Luna Luna were Andre Heller, Stefan Seigner and Heller Werkstatt GesmbH, an Austrian limited corporation.  After the sale agreement was executed, Admart AG, a Swiss corporation, replaced Werkstatt, although it remained liable for completing the contract.  We will refer to Andre Heller, Stefan Seigner, Heller Werkstatt GesmbH and Admart AG collectively as "Admart."

The sale agreement, executed on June 28, 1990, stated that the aggregate price was $6 million including a fee for the United States license rights for the various works of art.  Birch paid $3 million, leaving due $2 million after delivery of Luna Luna to San Diego, California and $1 million after "termination of the on-site construction" and set-up, but no later than March 31 1992.

The agreement, governed by Swiss law, provided for arbitration of any disputes in Zurich.  Admart agreed to provide evidence of the authenticity of the art and to indemnify Birch "from all claims from the artists, prior owners and lessees." Admart further promised to "deliver Luna [Luna] in materially and legally good standing with clear title."  The agreement gave

3

Birch the right to "examine the basic contracts" between Admart and the artists.

Andre Heller and Stefan Seigner provided personal guarantees for $500,000 "in case [Admart was] not in a position to fulfill the agreement." In the event of a dispute over the use of Luna Luna, Admart could replace any "single object by another one of similar artistic level and standard, within a reasonable length of time."

On July 26, 1990, the parties entered into an Addendum to the agreement that included confirmation that each of the artists had conveyed ownership and use of the original artwork to Admart as well as the right to transfer the artwork to third-parties. The amendment warranted that Admart's agreements with the artists would not restrict Birch's ownership of Luna Luna or its use within the United States.

Contending that it had not received sufficient documentary evidence of Admart's clear title to Luna Luna, Birch sent a notice of recission on October 2, 1991. Admart denied any breach of contract and the parties commenced arbitration in Zurich.

The Swiss arbitration panel issued its Final Arbitral Award in 1994 (the "Award"). The panel concluded that Birch's recission was invalid because Admart had no obligation to provide "clear title" until the date of delivery of Luna Luna, and because Birch was aware that Admart's ownership of the works of art was limited in various respects such that demand for "clear title" was never intended by the parties.

4

Birch contended that it could not display and operate Luna Luna in the United States without exposing itself to litigation with the artists. In response, the arbitrators indicated that they were persuaded by Admart's success in obtaining twenty seven "supplementary declarations" from the artists which, according to the panel, "specifically referr[ed] to the transfer of Luna Luna to [Birch] and specif[ied] that Luna Luna should have all rights of use of the copyrights and/or 'droit moral' for the artists [sic] work in the USA . . . ." Further, the arbitration panel emphasized that the sales agreement contained an indemnity provision as well as a statement that, in the event there was a problem with one of the artist agreements, Admart would substitute a similar piece of art.

The Award directed Birch to pay Admart the outstanding balance of $3 million – $2 million within thirty days of the date of the Award on simultaneous exchange of the artwork and an additional $1 million after Luna Luna had been set up, but no later than eight months following the date of the Award. A set-off against the $1 million payment was "allowable only for [sic] amount for which on the due date a claim by [Birch] is pending in another arbitration." Birch was also directed to pay interest and storage fees.

As an alternative, the Award "authorized" Admart to deposit the property with a third-party storage company in Vienna after thirty-five days from the date of the Award. Upon this action, the $2 million would become due and payable.

The parties engaged in some unsuccessful efforts to comply with the Award. Then, Birch appealed to the Swiss

5

Federal Supreme Court complaining, among other grounds, about the arbitrators' refusal to allow inspection of the goods before transfer. The Swiss court affirmed the Award on February 16, 1996, observing, *inter alia*, that the $1 million holdback was intended to adjust any claim for damage to the goods. The court did not rule on enforcement of the Award *per se*.

In June 1995, while the Swiss appeal was pending, Admart filed suit in the United States District Court for the District of Delaware asking that the Award be confirmed under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. 21 U.S.T. 2517, T.I.A.S. No. 6997; 9 U.S.C. § 201 et seq. The District Court stayed the confirmation proceedings pending the Swiss court's decision.

In 1999, Birch representatives attempted to examine the art in Vienna, but Admart allegedly denied them access. Birch then filed a petition to enforce the Award in the Austrian courts. That petition was dismissed in May 2002, apparently on the ground that, as the loser in the arbitration, Birch lacked standing to seek enforcement of the Award.

While the Austrian case was pending, Birch filed a request for a second arbitration in Switzerland, claiming damages for Admart's failure to comply with the Award. On March 21, 2005, the panel for the second arbitration decided it had jurisdiction over several of Birch's claims for damages to the art and loss of profits for the period of time since the Award was delivered in 1994. That panel has not yet ruled on the merits of those claims.

6

The District Court lifted its stay of the confirmation proceedings in 2003. When the proceedings resumed, Birch filed a request for production of the art based on evidence suggesting that several pieces had been repaired or improperly stored. The District Court denied the motion because the Award did not include such relief.

On January 29, 2004, the District Court required Birch to confirm that the monies required for satisfaction of the Award had been deposited in an interest-bearing account for the benefit of Admart. In turn, Admart was to submit to the District Court a description of the condition and location of the artwork. In its responsive affidavit, Admart explained that "a few" pieces of art needed minor restoration and four pieces had been destroyed by fire or had fallen apart. In addition, Admart noted that the shipping license for Luna Luna had expired so the containers holding the art could no longer be used. Birch submitted the affidavit of Thierry F. Ador, its attorney. He averred that "several years" earlier, Birch transferred funds "to [his control] so that the funds could be used to pay Admart AG to resolve [Birch's] dispute with Admart." Mr. Ador confirmed that the funds had been placed in "interest bearing bank accounts now holding in excess of $5,600,000 (USD) . . . ."

On June 8, 2004 the District Court confirmed the Award and issued the following order:

"(1)    On or before July 8, 2004, [Birch] shall pay the total of $5,562,818.19[1] to [Admart], plus whatever interest said monies have earned since their deposition with Theirry F. Ador [Birch's attorney in Switzerland].[2] The court declines to order any further interest, given the circumstances of this dispute.

(2)    Within 24 hours of receipt of said payment, [Admart] shall deliver to [Birch] the containers holding the artwork . . . [Admart] shall be prepared to repair the minor damage to the artwork sustained during the many years it has been in storage due to this dispute . . . ."

## II.

We begin our discussion with a threshold issue. Birch has argued that we should stay these proceedings pending

---

[1] The amount consists of the sum of the $3 million, storage fees, costs and interest through May 31, 2004.

[2] On October 6, 2004, the District Court issued a revised order in which it removed the requirement of "interest said monies have earned since their deposition with Theirry F. Ador." In effect, the rate of interest due after May 31, 2004 is that earned on the funds in the Ador accounts.

8

resolution of the arbitration currently under way in Switzerland. In addition, Birch filed with this Court a separate Motion to Adjourn the Decision on Enforcement of the 1994 Arbitration Award. Birch claimed that the issues before this Court overlap with those before the Swiss arbitration panel and that we should stay our proceedings to avoid a conflicting ruling.

> Article VI of the Convention states in relevant part:
>
> "If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award . . . ."

Birch argues that it made an application "for the setting aside or suspension of the [1994 arbitration] award" by instituting the currently pending Swiss arbitration proceedings.

We decline the request to adjourn the appeal on enforcement of the Award and will affirm the District Court's decision to deny further delay. In Hewlett-Packard Co., Inc. v. Helge Berge, Etc., 61 F.3d 101 (1st Cir. 1995), the Court of Appeals for the First Circuit considered a district court's decision not to adjourn proceedings to enforce one arbitration award while a second arbitration proceeding was pending. The issues pending in arbitration partially overlapped those pending as part of the enforcement suit. On appeal, the Court held that the district court erred in refusing to adjourn the suit as to the

9

issues implicated by the pending arbitration. With respect to the issues no longer contested, however, adjournment was not appropriate and the enforcement proceedings should continue. Id. at 105.

It is clear that the issues to be arbitrated in Switzerland do not overlap those in the case before us which is limited to enforcement of the Award. By contrast, the claims before the arbitration panel involve actions or harm that Birch has alleged occurred *after* the Award was rendered. Such claims are not within the ambit of Admart's suit to confirm the Award.

The Swiss arbitration panel reached the same conclusion when Admart sought to stay the arbitration until this case was completed. The arbitration panel rejected Admart's motion in a June 5, 2005 order in which it stated that the issues in the arbitration proceedings are different from those before us. The panel noted that it would adjudicate all the claims currently before it, regardless of whether we enforced the Award.

Because the issues here are distinct from those in the pending Swiss arbitration proceedings, the arbitration is not an attempt to set aside or suspend the Award. We will, therefore, proceed to decide the issues before us.

### III.

Birch has appealed asserting t hat the District Court improperly modified the Award by abrogating simultaneous performance, failing to require the artist's documentation be transferred, failing to honor the $1 million holdback and failing

10

to stay confirmation in light of the pending second arbitration proceeding in Switzerland. Admart counters that Birch waived its argument that the opinion of the Swiss Federal Supreme Court supports concurrent performance.

We review *de novo* the District Court's interpretation of the Convention. Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 443 n.2 (3d Cir. 2003).

In 1970, the United States acceded to the Convention and supplemented its action through the enactment of legislation. See 9 U.S.C. § 201 et seq. As the Supreme Court explained, the principal purpose for acceding to the Convention was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974); see also China Minmetals Materials Import & Export Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 282-83 (3d Cir. 2003); General Electric Co. v. Deutz Ag, 270 F.3d 144, 154 (3d Cir. 2001). Consistent with the policy of favoring enforcement of foreign arbitral awards, parties have limited defenses to recognition and enforcement of an award as set out in Article V of the Convention.

Under the Convention, a district court's role is limited – it must confirm the award unless one of the grounds for refusal specified in the Convention applies to the underlying award. Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation, 361 F.3d 676, 683 (2d Cir. 2004).

11

Article V provides that:

"1.  Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters

12

beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

13

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country."

To carry out the policy favoring enforcement of foreign arbitral awards, courts have strictly applied the Article V defenses and generally view them narrowly. See China Minmetals, 334 F.3d at 283.

In Yusuf Ahmed Alghanim & Son, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15 (2d Cir. 1997), the court emphasized the limited power of review granted to district courts under the Convention. The court examined the distinction between awards rendered in the same nation as the site of the arbitral proceeding and those rendered in a foreign country. The court concluded that more flexibility was available when the arbitration site and the site of the confirmation proceeding were within the same jurisdiction. Id. at 22-23. However, "the [C]onvention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." Id. at 23.

Yusuf observed, "[T]here is now considerable caselaw holding that, in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief

14

enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award." Id. at 20. Thus, mistake of fact and manifest disregard of the law do not justify setting aside an award. Id. (citing M&C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 (6th Cir. 1996).

In the same vein, in Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969 (2d Cir. 1974), the Court of Appeals reviewed the grounds for refusal contained in the Convention and said that the public policy defense is available "only where enforcement would violate the forum state's most basic notions of morality and justice." Id. at 974. Similarly, the court noted that an award cannot be enforced under the Convention where it is "predicated on a subject matter outside the arbitrator's jurisdiction," but the Convention does not "sanction second-guessing the arbitrator's construction of the parties' agreement." Id. at 977.

Parsons & Whittemore's adhered to a close reading of an arbitral award's text, but the court considered, on its merits, a party's contention that the judgment contained an arithmetical error. Id. at 978. The plaintiff contended that the district court had failed to include in its judgment the amount of $4,750 due from the defendant for arbitration expenses. The Court of Appeals concluded that the sum was payable to the arbitration panel, not to the plaintiff and, hence, the district court's judgment was correct. The opinion did not quote the text of the underlying award but conceded that the plaintiff, having paid more than its share of the expenses, was entitled to a partial refund. Nonetheless, the district court's order did not award the $4,750 to the plaintiff. The Court of Appeals discounted mere

15

oversight and said "we find that this exclusion reflects the most plausible interpretation of [the defendant's] liability to [the plaintiff] and therefore decline to amend the judgment upward by \$4,750." Id. at 978. The Court of Appeals thus recognized a district court's right to interpret or clarify the terms of the arbitral award.

A somewhat similar situation arose in Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc., 969 F.2d 764 (9th Cir. 1992). In that case, Iran received an award of \$3.6 million and, in addition, the arbitrators directed that defendant "'make available' to Iran certain communications equipment in the possession of [the defendant]." Id. at 767.

The district court confirmed the award, but its order relieved the defendant of the obligation to transfer the communication equipment because doing so would violate United States' export restrictions. While the appeal to the Court of Appeals for the Ninth Circuit was pending, the United States Department of State, as *amicus*, suggested that the matter might be resolved by making the equipment available to Iran at a warehouse in the United States. Iran could then sell the equipment to a buyer who could lawfully use or export it. Id. at 773.

The Gould court observed that "it is unclear whether a plan that essentially amounts to selling the equipment and giving over the proceeds to Iran would actually fulfill the terms of the award, which lists particular pieces of equipment that must be 'made available' to Iran." Id. at 773. The court expressed "no views at [that] time on the legality" under the Convention of the

16

district court's orders concerning "specific performance of the award, or on whether the State Department's proposal is consistent with federal law or fulfills the terms of the award." Id. at 773-74.

Nonetheless, the court remanded the case to the district court for resolution of factual issues raised by the State Department's proposal and other regulatory matters. The Gould court's action is significant in that it required that the district court consider the State Department's proposal – a distinct modification of the award. If the Court of Appeals had concluded that any alteration to the terms of the Award was prohibited, there would have been no basis for a remand.

Gould and Parsons & Whittemore indicate that there is a distinction between the substance of a foreign arbitral award and its execution. The Convention uses the term "enforcement," but does not mention execution on a judgment, a process that would generally be governed by the law of the confirmation forum. Gould and Parsons & Whittemore did not give the arbitrator's decisions a brittle rigidity but found some flexibility to modify execution of an award without altering its substance. That leeway, however, is very small and is available only in limited circumstances so as not to interfere with the Convention's clear preference for confirmation of awards.

With these considerations in the background, we proceed to the text of the Award in this case which reads in pertinent part:

17

"2. The counterclaim [of Admart] is admitted in the following manner:

> a. [Birch] is ordered to pay [Admart] within 30 days from the receipt of the Award USD 2,000,000. – plus interest at 4.5% p.a. non-compound from 1 January 1992 to the date of the Award and at 6.5% p.a. non-compound from the date of the Award, simultaneously with [Admart]
>
> – releasing to [Birch] the containers as per Annex 1 containing the "Luna Luna" objects, in their present state at their present location in Vienna,
>
> – releasing to [Birch] the Artists' Declaration as per Annex 2 in Vienna.
>
> – releasing to [Birch] the technical documentation ("passports") for "Luna Luna" in Vienna.
>
> b. [Birch] is ordered to pay to [Admart] after termination of the on site construction, and the project is completely set up, but not later

18

> than within 8 months from the
> receipt of the Award USD
> 1,000,000. – plus interest at 4.5%
> p.a. non-compound from 1 April
> 1992 to the date of the Award and
> at 6.5% p.a. non-compound from
> the date of the Award.

> Against this payment a set-off is allowable only
> for [sic] amount for which on the due date a claim
> by [Birch] is pending in another arbitration.

> 3. After 35 days from the date of receipt of the
> Award, [Admart is] authorized to deposit, the
> items described in No. 2 a. above, at [Birch's] risk
> and expense, with a third party storage company
> in the Vienna area. Upon such deposit, the
> payment as per No. 2 a. above becomes due and
> payable immediately and unconditionally.'[3]

The District Court judgment confirming the Award was
consistent with its substance, that is, Birch was required to pay
for the art and Admart was required to transfer possession.
Some of the terms of execution of the Award in the District
Court's order, however, varied from those set out by the
arbitrators. The passage of ten years from the rendition of the
Award and the date of the District Court's confirmation order

---

[3]  The Award also required Birch to pay for storage costs,
arbitration costs, fees and interest.

understandably necessitated some deviation from the original terms of execution. Any modification, however, should adhere as closely to the text of the Award as feasible.

The Award provided two options for performance; the first was effective for thirty days after the Award and provided for simultaneous exchange of $2 million and the artwork in its then condition along with its supporting documentation. In addition, $1 million would be due to Admart eight months after Birch had set up the artwork. At the time of the Award, Luna Luna was expected to be set up in an amusement park leased by Birch in San Diego. A set-off against the $1 million was to be permitted at that point against a possible claim submitted by Birch if another arbitration was pending.

The Award's second alternative would come into effect thirty-five days after rendition on which date Admart was authorized to deposit the artwork and documentation with a storage company in Vienna at Birch's expense. Upon such deposit, the $2 million payment became due and payable. The $1 million holdback and set-off also applied if this alternative was pursued. Under both options, the Award provided Birch a potential set-off.

One of the principal aims of arbitration is reducing the delay in resolving disputes. As the Parsons & Whittemore court pointed out, "'Extensive judicial review frustrates the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings.'" Parsons & Whittemore, 508 F.2d at 977 (quoting

20

Saxis Steamship Co. v. Multifacs International Traders, Inc.,
375 F.2d 577, 582 (2d Cir. 1967)).

The Award's provision for simultaneous exchange within
thirty days was an obvious encouragement to the parties to
resolve their dispute promptly. That incentive is even more
desirable now, after ten years of international bickering. No
advantage to either party exists at this stage in the Award's
second option of storage with delay in payment.

We see no reason why the concurrent exchange should
not now be directed to take place, rather than allowing a twenty-
four hour interval between payment and transfer as directed by
the District Court. That modification of the Award serves no
apparent purpose and it is appropriate to adhere to the original
text whenever possible. We will modify the District Court's
order to delete the twenty-four hour provision.

The holdback of $1 million, an expedient that is present
in the original sales agreement, was intended to address the
possibility that the artwork might suffer physical damage before
completion of set up in California. The record does not reveal
whether, after the long delay here, Birch intends to, or has
facilities available to, set up Luna Luna in San Diego as
originally contemplated. The arbitrators use of that eventuality
is no longer an appropriate benchmark for performance.

The Award did provide for an alternative that is presently
viable, an additional arbitration proceeding which might give
Birch a right of set-off. Admart has conceded that some items
of the artwork have been damaged, destroyed or are missing.

21

Birch's second arbitration seeks compensation for this injury and other losses caused by the delay. Whether there will be a set-off and the amount, if any, cannot be determined until an award is rendered.[4]

In the circumstances here, we conclude that the District Court's confirmation order should have adhered more closely to the Award and provided for the holdback of $1 million even though the initial eight month period had expired. We leave to the arbitrators any claims for damage to the pieces of art. It is appropriate to postpone payment of all or a portion of the holdback until such time as an award determines whether Birch is entitled to a set-off and, if it is, in what amount.

We also modify the District Court's order to provide that in addition to the artwork itself, the documentation consisting of the artists' declarations and "passports" should also be transferred to Birch. The parties have not challenged the assessment for interest, storage fees and arbitration costs and we accept the District Court's computation for these items.

We will modify the District Court's order of October 6, 2004 as follows:

_____

[4] We note that much of the controversy between the parties might have been resolved had Admart, although not legally bound to do so, permitted Birch to inspect the property.

22

"1.    The Stephen and Mary Birch Foundation is required to pay plaintiffs $3,841,045.19,[5] plus the interest that sum has earned between May 31, 2004 and the date the money is paid to the plaintiffs. In addition, Birch will pay storage charges from May 31, 2004 to the date of transfer.

2.    The parties shall simultaneously exchange in Vienna [on a date to be set by th e District Court] the payment described in paragraph 1 and the property constituting Luna Luna, including the artwork and the documentation consisting of the artists' declarations and the technical documentation ("passports").

3.    The Stephen and Mary Birch Foundation is required to pay $1 million to the plaintiffs which shall be set off against any award by the arbitration panel constituted in 2004. Interest on the net amount shall be payable as per the formulation used in the Court's Order of October 6, 2004. The total sum

---

[5] The District Court ordered Birch to pay $5,562,818.19. We revise that figure to account for the $1 million holdback. As of May 31, 2004, $721,773 of interest had accumulated on the holdback amount. We subtracted the holdback plus interest from the amount set out in the District Court's order.

23

> described in this paragraph 3 shall be due
> within thirty days of the date of the
> arbitrators' award.  In the interim, the
> Stephen and Mary Birch Foundation shall
> continue to ensure that Thierry Ador
> maintains the interest bearing accounts
> described in his affidavit of April 29,
> 2004."

We remind the parties that they have submitted themselves to the jurisdiction of the United States District Court for the District of Delaware. Accordingly, failure to follow the orders of the District Court may submit them to sanctions for contempt of court. This dispute has been unduly prolonged by the recalcitrance of the parties and must come to an end.

The Judgment of the District Court will be affirmed with modifications in the Order of October 6, 2004.

24